1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8         FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY HIGBEE,

11          Petitioner,              No. CIV S-04-1820 JAM EFB P

12      vs.

13   MIKE KNOWLES, et al.

14          Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding without counsel in an action seeking a writ of

17   habeas corpus under 28 U.S.C. § 2254.  He does not challenge the constitutionality of his

18   underlying conviction; rather, he challenges the 2002 determination by the California Board of

19   Prison Terms (hereinafter, the "Board")[1] that he was unsuitable for parole.  Petitioner contends

20   that (1) the Board's denial of parole violated his due process rights because there was no

21   evidence to support the Board's decision, the Board considered improper evidence in reaching its

22   decision, and the Board failed to consider positive aspects of his incarceration; (2) the Board

23   violated his due process rights by not timely responding to his appeal of its parole denial; (3) the

24   Board violated his due process rights by failing to provide him with a copy of the lifer packet

25   _____

26        [1]  California has since replaced the Board of Prison Terms with the Board of Parole
     Hearings.  *See* Cal. Penal Code § 5075(a).

                                            1

used at his parole hearing; (4) the Board improperly failed to grant him a postponement of the parole hearing; (5) the Board should not have allowed an attorney he fired to speak on his behalf at the hearing; and (6) the Board was biased against him and retaliated against him by denying him parole.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In October 1987, petitioner pled guilty in Los Angeles County Superior Court to one count of second degree murder.  Answer, Ex. A.  Due to enhancements and the revocation of the suspended status of a previous charge of lewd acts with a child under age 14, petitioner was sentenced to a state prison term of twenty-seven years to life with the possibility of parole.[3]  Answer, Exs. A, B.

On January 10, 2002, the Board held a parole hearing for petitioner.  Pet., Ex. Z.  Prior to the hearing, petitioner was sent a Notice of Hearing Rights and thereafter waived his right to an attorney and chose not to attend the hearing.  Answer, Exs. E, F, G.  Although petitioner waived his right to an attorney, the Board insisted that his attorney attend the hearing based upon petitioner's questionable mental state and ability to knowingly waive an attorney at the hearing.

_____

[2]  In December 2008, petitioner filed a request to transfer this case to the Central District of California on the ground that this court is biased and has been slow to respond to petitioner's habeas application.  Because this court recommends that petitioner's habeas application be denied for the reasons stated herein, this court also recommends that petitioner's request for a transfer be denied as moot.  The court has also carefully considered petitioner's claim of bias in the context of whether recusal is warranted.  The claim of bias is conclusory and non-specific.  However, whatever bias is being claimed, there is no indication whatsoever of an extrajudicial source of bias and recusal is unwarranted.  *See United States v. Martin*, 278 F .3d 988, 1005 (9th Cir. 2002).  Neither is there any basis for recusal under 28 U.S.C. § 455(a).

[3]  Petitioner contends that he was sentenced to 21 years to life, not 27 years to life, for his second degree murder conviction and all related enhancements.  Pet. at 11, Ex. I.  Although petitioner's sentence for second degree murder (Cal. Penal Code § 187(a)), for using a deadly or dangerous weapon in the commission of a felony (Cal. Penal Code § 12022(b)), and for having a previous serious felony conviction (Cal. Penal Code § 667(a)) totaled 21 years to life, that sentence was "to run consecutively to" a six year determinate sentence for committing a lewd or lascivious act upon or with a child who is under the age of 14 years (Cal. Penal Code § 288(a)), making petitioner's total sentence 27 years to life.  Answer, Exs. A, B, C.

1    Pet., Ex. Z, at 3-5.

2         At the hearing, the Board found petitioner unsuitable for parole and determined that a

3    subsequent hearing would be held in four years.  *Id.*  The Board based this determination on its

4    findings that (1) the offense was carried out in an especially cruel, callous, dispassionate and

5    calculated manner, and demonstrated an exceptionally callous disregard for human suffering,

6    since petitioner hit and strangled the victim with his belt and cut the victim's breasts and pubic

7    area and since the motive for the crime was inexplicable or very trivial in relationship to the

8    offense (*id.* at 19); (2) petitioner had a record of assaultive behavior and an escalating pattern of

9    criminal conduct and violence, including a charge of lewd and lascivious conduct upon a child

10   under 14 years of age, and had failed to demonstrate evidence of positive change (*id.* at 20, 21);

11   (3) petitioner had a history of unstable relationships, mental illnesses, and substance abuse (*id.*);

12   (4) petitioner failed to profit from society's previous attempts to correct his criminality

13   (petitioner was on probation at the time of the crime at issue) (*id.* at 20); (5) although petitioner

14   received only two serious rules violation reports during his incarceration (one for being involved

15   in mutual combat and one for being out of bounds), he received several very concerning

16   counseling chronos: on September 22, 1988, petitioner wrote and gave his teacher a paper that

17   contained sexually explicit information; on September 24, 1990, he was found with sexually

18   explicit pictures of children in his cell; and on March 23, 1993, he was counseled regarding his

19   sexually explicit correspondence with a fifteen year old (*id.* at 22; Answer, Ex. I); and (6)

20   petitioner lacked realistic parole plans (Pet. at 24).  The Board also noted that the Los Angeles

21   County District Attorney's Office strongly opposed petitioner's release on parole (*id.*), and

22   considered a July 19, 2001 psychiatrist report which was not supportive of petitioner's release.

23   *Id.* at 22.  Even though petitioner refused to meet with the psychiatrist and the psychiatrist

24   indicated that he could not give an accurate assessment of dangerousness, the psychiatrist did

25   opine that petitioner needed to undergo further interviews regarding the sexually based

26   infractions.  *Id.* at 23-24.

1    The Board commended petitioner for his satisfactory work reports and his enrollment in a

2 number of self-help programs and vocational programs, but determined that such behavior was

3 not enough to overcome the factors indicating he was unsuitable for parole.  *Id.* at 25.  The

4 Board concluded that petitioner "needs therapy in order to face, discuss, understand and cope

5 with stress in a non-destructive manner" and that "[u]ntil progress is made, [petitioner] continues

6 to be unpredictable and a threat to others."  *Id.* at 24.

7    On March 11, 2002, petitioner sent a BPT Form 1040 Appeal to the appeals office at

8 Mule Creek State Prison and, on September 14, 2002, after not receiving a response to that

9 appeal, petitioner filed an inmate appeal form (CDC 602).  Pet., Exs. A, B.  On December 10,

10 2002, the Board denied petitioner's appeal.  Pet., Ex. Q.  The Board stated:

11       1.  The prisoner contends the hearing panel based its decision on
         incomplete information.
12
13       **Appeal Denied**: Had the prisoner chosen to attend his hearing he
         would have had the opportunity to make any clarification in the
14       record and submit any additional documents.  The Appeals Unit
         finds the hearing panel did a thorough review of the prisoner's
15       central file but could find no evidence that the prisoner has
         completed any vocation training.  He was commended for
16       participating in vocational training, but he was lacking completion
         certificates.

17       2.  The prisoner contends the hearing panel failed to take into
         consideration his positive programming.
18
19       **Appeal Denied**: The primary consideration of the panel in setting
         a parole release date is the vast consideration of public safety (see
20       PC § 3041(b)).  The elements upon which that consideration is
         based are vast.  The discretion to weigh these factors is vested in
21       the Board and, therefore, in the hearing panel.  Even an "amazing
         in-prison record" does not, in and of itself, demonstrate what the
22       prisoner's behavior might be out of prison or mandate a finding of
         suitability.

23       3.  The prisoner contends the psychological report indicating a
         longer period of incarceration is necessary, is not valid since he
24       was not interviewed by the psychologist.

25       **Appeal Denied**: The prisoner on his own volition chose not to be
         interviewed by the psychologist.  This is the prisoner's right but he
26       must understand that this report and any future reports will be

                                         4

based on the psychologist's consideration of the documents available without any clarification or input from the prisoner.

4.  The prisoner contends the hearing panel cannot require he participate in therapy since none is available and would jeopardize his safety.

**Appeal Denied**: The Board recognizes that self-help and therapy programming is limited in some institutions but did make the appropriate finding that, if any becomes available, the prisoner should participate to become more suitable for parole.

5.  The prisoner contends the hearing panel used incorrect information in denying parole since he cannot reduce his custody level until more programming becomes available.

**Appeal Denied**: The hearing panel did not deny parole based on his custody level but recommended he work to reduce his custody level.  In the written finding the hearing panel did not make that recommendation.  The Appeals Unit finds this oversight had no bearing on the finding of unsuitability.

6.  The prisoner contends his rights were violated when the Board retained an attorney to represent him over his objections.

**Appeal Denied**: The Board of Prison Terms is under court imposed supervision and order based on the Americans with Disabilities Act.  If there is a concern a prisoner may not be able to adequately represent himself and understand his rights then the Board will appoint an attorney regardless of any objections by the prisoner.  The prisoner's mental health history suggests that the hearing panel made a correct decision.

7.  The prisoner contends the hearing panel used criminal conduct in which there were no convictions to deny parole.

**Appeal Denied**: From reading the hearing transcript the Appeals Unit concludes that the hearing panel realized what the prisoner had been convicted of but was negatively impressed by the totality of the circumstances surrounding the prisoner's portion of the crimes.  This appears appropriate since Title 15 CCR § 2402(b) indicates that behavior before, during, and after the crime is relevant in parole consideration for life prisoners.

Pet., Ex. Q.

On November 14, 2002, petitioner filed a petition for a writ of habeas corpus in Amador County Superior Court.  Answer at 4.  After numerous transfers, the Los Angeles County Superior Court denied the petition on July 7, 2003 in a reasoned opinion.  Pet., Ex. J.  The court

1    stated:

2          Petitioner was committed to prison on October 16, 1987 after
           pleading guilty to one count of second degree murder.  He also had
3          a concurrent commitment for a violation of section 288(a) P.C.,
           lewd and lascivious acts with a child under 14 years of age.  In the
4          life offense, petitioner strangled and mutilated the female victim
           by strangling her with his belt and then cutting her pubic areas as
5          well as portions of her breast.

6          In prison, petitioner received a number of [counseling chronos]
           that were for matters that were sexual in nature.  On September 24,
7          1990 he had a series of photographs of children in his cell that
           were sexually explicit; on September 22, 1988 petitioner write a
8          paper with sexually explicit sentences which he gave to his
           teacher; on March 23, 1993 petitioner again gave a paper with
9          sexually explicit writing on it for the teacher.  Petitioner was also
           interviewed at that time because of a complaint from a citizen that
10         petitioner was writing sexually explicit letters to her 15 year old
           daughter and the mother wanted it stopped.

11
           When coupled with the concurrent commitment offense for
12         violating section 288(a) P.C., these chronos take on serious
           proportions.  And, when petitioner refused to appear for a
13         psychiatric evaluation on July 19, 2001, the Board could only do
           what it did.

14
           Based on the record, it can not be said that the Board abused its
15         discretion in refusing to set a parole date.

16   Pet., Ex. J.[4]

17         Petitioner then filed a habeas petition in the California Second District Court of Appeal,

18   which was summarily denied, and a habeas petition in the California Supreme Court, which was

19   summarily denied on August 18, 2004.  Pet., Exs. K, W.  Petitioner's federal habeas petition was

20   received for filing by this court on August 31, 2004.

21   ////

22   ////

23   ////

24   _____

25        [4] Petitioner argues that the Los Angeles County Superior Court judgment violated his
     right to a fair hearing because the court failed to address several of the issues he presented.  Pet.
26   at 14.  However, the fact that the judgment may not have specifically addressed each of
     petitioner's individual arguments does not mean those arguments were not considered.

DISCUSSION

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

Pursuant to 28 U.S.C. § 2254, a person in custody under a state court judgment may apply for a writ of habeas corpus "on the ground he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Because petitioner filed his application for a writ after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d) (referenced herein as § 2254(d) or AEDPA); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under the "contrary to" clause of § 2254(d)(1), a writ may be granted if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision' of the Supreme Court and nevertheless arrives at a different result."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06).  Under the "unreasonable application" clause, a writ may be granted if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*, 529 U.S. at 413.

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the last reasoned state court decision addressing the merits of the petitioner's claim.  *Robinson v. Ignacio*, 360 F.3d

1    1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides

2    no reasoning to support its conclusion, a federal habeas court independently reviews the record

3    to determine whether "the state court decision was objectively unreasonable." *Himes v.*

4    *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.

5    2002); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de

6    novo when the state court does not supply reasoning for its decision, but an independent review

7    of the record is required to determine whether the state court clearly erred in its application of

8    controlling federal law.").  Here, the Los Angeles County Superior Court issued the last and only

9    reasoned decision addressing the merits of petitioner's habeas claim, but did not issue a reasoned

10   decision regarding all of petitioner's specific arguments/claims.  Therefore, with regard to the

11   specific claims addressed therein, this court will analyze whether the reasoned decision as to

12   those claims was erroneous under the standards set forth in § 2254(d).  With regard to the claims

13   that were not specifically addressed therein, this court will independently review the record to

14   determine whether the state courts' denial of those claims was erroneous under the standards set

15   forth in § 2254(d).[5]

16   II.  Petitioner's Claims

17        A.  Due Process – Whether "Some Evidence" Supports the Board's Decision

18        Petitioner contends that the Board's 2002 parole denial violated his due process rights

19   because there was no evidence of his current dangerousness to support the denial.  Pet. at 4.  He

20   further argues that the Board improperly relied upon the July 19, 2001 psychiatric report since

21   the psychiatrist made the assessments therein regarding his mental state without conducting an

22

23        [5]  It is unclear from the record before this court whether all of petitioner's claims
     addressed herein were raised before one or more of the state courts.  Petitioner contends that the
24   claims were raised before the Los Angeles County Superior Court and before the California
     Supreme Court.  Pet. at 14.  Since respondents admit that petitioner exhausted his state court
25   remedies with respect to all of the claims raised in his federal habeas petition, it is assumed that
     the claims which were not addressed by the Los Angeles County Superior Court in its reasoned
26   opinion (or any other court) were, at the very least, raised before and rejected by the California
     Supreme Court.  Answer at 4.

8

1   interview of petitioner.  *Id.* at 5, 7-8.  He also asserts that the Board improperly relied upon

2   petitioner's past in denying petitioner parole (*id.*), and that the Board improperly failed to

3   consider the positive aspects of petitioner's incarceration.  *Id.* at 6.  Further, petitioner contends

4   that he is unable to complete the additional therapy the Board suggested he complete because the

5   California Department of Corrections does not and will not provide such therapy to prisoners

6   with life sentences, and that although the Board directed petitioner to work to lower his custody

7   level by engaging in further programming, there are no additional programs available to him.  *Id.*

8   at 5, 8-9; Ex. D.

9        Respondents counter that there is more than "some evidence" to support the Board's

10  decision, including the gruesomeness of petitioner's crime; petitioner's record of assaultive

11  behavior; petitioner's escalating pattern of criminal conduct and violence; petitioner's history of

12  unstable relationships; petitioner's history of mental illness; petitioner's failure to profit from

13  society's previous attempts to correct his criminality; the multiple counseling chronos petitioner

14  received, including one for having sexually explicit pictures of children in his cell and another

15  for writing a paper containing very explicit information; the fact that petitioner had been

16  counseled for sexually explicit correspondence with a fifteen year old; a psychiatrist report that

17  was not supportive of release; petitioner's lack of residential or employment plans; and the

18  district attorney's opposition to petitioner's release on parole.[6]  Answer at 5, 14.  Respondents

19  also contend that the Board properly considered the July 19, 2001 psychiatric report and that the

20  Board did consider positive aspects of petitioner's incarceration, including his satisfactory work

21  reports and enrollment in self-help and vocational programs.  *Id.* at 5-6.

22  _____

23       [6]  Respondents also argue that there is no clearly established liberty interest in parole and
    that the state court's denial of petitioner's habeas application did not violate clearly established
24  Supreme Court authority since petitioner was afforded all of the due process protections required
    by *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 369 (1987).
25  Answer at 9-13.  As discussed below, controlling precedent in this circuit has held otherwise.
    *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).  However, petitioner's
26  habeas application is denied on alternative grounds and therefore those arguments need not be
    resolved here.

1                    1. <u>Due Process in the California Parole Context</u>

2          The Due Process Clause of the Fourteenth Amendment prohibits state action that

3   deprives a person of life, liberty, or property without due process of law.  One alleging a due

4   process violation must first demonstrate that he was deprived of a liberty or property interest

5   protected by the Due Process Clause and then show that the procedures attendant upon the

6   deprivation were not constitutionally sufficient.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454,

7   459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

8          A protected liberty interest may arise from either the Due Process Clause of the United

9   States Constitution or state laws.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United

10  States Constitution does not, of its own force, create a protected liberty interest in a parole date,

11  even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  However, "a state's

12  statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will

13  be granted' when or unless certain designated findings are made, and thereby gives rise to a

14  constitutional liberty interest."  *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz v. Inmates of*

15  *Neb. Penal*, 442 U.S. 1, 12 (1979)).

16         California's parole scheme gives rise to a cognizable liberty interest in release on parole,

17  even for prisoners who have not already been granted a parole date.  *Sass v. Cal. Bd. of Prison*

18  *Terms*, 461 F.3d at 1128; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306

19  F.3d at 903; *see also In re Lawrence*, 44  Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly,

20  this court must examine whether California provided the constitutionally-required procedural

21  safeguards when depriving petitioner of a protected liberty interest and, if not, whether the Los

22  Angeles County Superior Court's conclusion that it did was contrary to or an unreasonable

23  application of clearly established federal law as determined by the Supreme Court.

24         The Supreme Court has clearly established that a parole board's decision deprives a

25  prisoner of due process with respect to his constitutionally protected liberty interest in a parole

26  release date if the board's decision is not supported by 'some evidence in the record,' or is

                                              10

'otherwise arbitrary.'" *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (quoting

*Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).  "The 'some evidence' standard is minimally

stringent," and a decision will be upheld if there is any evidence in the record that could support

the conclusion reached by the factfinder.  *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing

*Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105

(9th Cir. 1986).  However, "the evidence underlying the board's decision must have some indicia

of reliability." *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *see also*

*Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some

evidence" standard is satisfied does not require examination of the entire record, independent

assessment of the credibility of witnesses, or the weighing of evidence.  *Toussaint*, 801 F.2d at

1105.  The question is whether there is any reliable evidence in the record that could support the

conclusion reached.  *Id.*

When assessing whether a state parole board's suitability decision was supported by

"some evidence," the analysis "is framed by the statutes and regulations governing parole

suitability determinations in the relevant state."  *Irons*, 505 F.3d at 851.   This court must:

> look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
> record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
> [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in *Hill*.

*Id.*

Under California law, prisoners serving indeterminate prison sentences "may serve up to

life in prison, but [] become eligible for parole consideration after serving minimum terms of

confinement."  *In re Dannenberg*, 34 Cal. 4th 1061, 1078 (2005).  The Board normally sets a

parole release date one year prior to the inmate's minimum eligible parole release date, and does

so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in

respect to their threat to the public."  *In re Lawrence*, 44 Cal. 4th at 1202 (citing Cal. Penal Code

1  § 3041(a)).  A release date *must* be set "unless [the Board] determines that the gravity of the

2  current convicted offense or offenses, or the timing and gravity of current or past convicted

3  offense or offenses, is such that consideration of the *public safety* requires a more lengthy period

4  of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code §

5  3041(b).

6        To carry out the mandate of section 3041, the Board must determine "whether the inmate

7  poses '*an unreasonable risk of danger to society if released from prison*,' and thus whether he or

8  she is suitable for parole."  *In re Lawrence*, 44 Cal. 4th at 1202 (citing Cal. Code Regs., tit. 15,

9  § 2281(a)) (emphasis added).  In doing so, the Board must consider all relevant, reliable

10  information available regarding

11         the circumstances of the prisoner's social history; past and present

12         mental state; past criminal history, including involvement in other
       criminal misconduct which is reliably documented; the base and

13         other commitment offenses, including behavior before, during and
       after the crime; past and present attitude toward the crime; any

14         conditions of treatment or control, including the use of special
       conditions under which the prisoner may safely be released to the
       community; and any other information which bears on the

15         prisoner's suitability for release.

16  Cal. Code Regs. tit. 15, § 2281(b).

17        The regulation identifies circumstances that tend to show suitability or unsuitability for

18  release.  *Id.* § 2281(c) & (d).  The following circumstances tend to show that a prisoner is

19  suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing

20  crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably

21  stable relationships with others; (3) the prisoner has performed acts that tend to indicate the

22  presence of remorse or has given indications that he understands the nature and magnitude of his

23  offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the

24  prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

25  (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces

26  the probability of recidivism; (8) the prisoner has made realistic plans for release or has

1  developed marketable skills that can be put to use upon release; and (9) institutional activities

2  indicate an enhanced ability to function within the law upon release.  *Id.* § 2281(d).

3        The following circumstances tend to indicate unsuitability for release: (1) the prisoner

4  committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a

5  previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's

6  crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental

7  problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison.

8  *Id.* § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in

9  an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked,

10  injured, or killed in the same or separate incidents; (B) the offense was carried out in a

11  dispassionate and calculated manner, such as an execution-style murder; (C) the victim was

12  abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a

13  manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the

14  motive for the crime is inexplicable or very trivial in relation to the offense.  *Id.* § 2281(c)(1)(A)

15  - (E).

16        In California, the overriding concern in determining parole suitability is public safety and

17  the focus is on the inmate's *current* dangerousness.  *In re Dannenberg*, 34 Cal. 4th at 1086; *In re*

18  *Lawrence*, 44 Cal. 4th at 1205.  The California Supreme Court recently stated:

19          [T]he Penal Code and corresponding regulations establish that the
        fundamental consideration in parole decisions is public safety

20          [and] the core determination of "public safety" . . . involves an
        assessment of an inmate's *current* dangerousness. . . . [A] parole

21          release decision authorizes the Board (and the Governor) to
        identify and weigh only the factors relevant to predicting "whether

22          the inmate will be able to live in society without committing
        additional antisocial acts."  These factors are designed to guide an

23          assessment of the inmate's threat to society, *if released*, and hence
        could not logically relate to anything but the threat *currently* posed

24          by the inmate.

25  *In re Lawrence*, 44 Cal. 4th at 1205-06 (internal citations omitted).  Accordingly, in reviewing a

26  decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some

1   evidence supports the decision of the Board that the inmate constitutes a current threat to public

2   safety, and not merely whether some evidence confirms the existence of certain factual

3   findings." *Id.* at 1212 (citing *In re Rosenkrantz*, 29 Cal. 4th at 658; *In re Dannenberg*, 34 Cal.

4   4th at 1071; *In re Lee*, 143 Cal. App. 4th 1400, 1408 (2006)).

5         2. <u>Analysis</u>

6         Petitioner argues that the Board's parole denial was not supported by evidence that

7   petitioner constitutes a current threat to public safety.  Pet. at 4.  He argues that, to the contrary,

8   he gets "above average work reports at his job site"; his supervisor reported that "he gets along

9   with others and works well with other and is learning a trade"; he always respects staff and

10  inmates; he has attended group therapy; he has worked very hard at being successful in prison;

11  he has completed vocational dry cleaning and other trades and programs; he has no juvenile

12  record; he has stable relationships with others; he is very remorseful; and other than two

13  disciplinary violations he received that were not his fault, petitioner has had good institutional

14  behavior.  *Id.* at 4-5, 6, 13.

15        However, as discussed above, federal due process requires only that the Board's decision

16  be based on "some evidence" bearing "indicia of reliability" that petitioner constituted a current

17  threat to public safety.  *Jancsek*, 833 F.2d at 1390; *In re Lawrence*, 44 Cal. 4th at 1212.  This is

18  true even though there may be other factors or evidence favoring release.  Here, even taking all

19  factors and evidence favoring petitioner's release into account, there was sufficient evidence

20  supporting the Board's denial of parole to petitioner.

21        First, the Board found that petitioner's commitment offense was cruel, callous,

22  dispassionate and calculated, and demonstrated an exceptionally callous disregard for human

23  suffering; and that the motive for the crime was inexplicable or very trivial in relationship to the

24  offense.[7]  In California, the heinous, atrocious, or cruel nature of the commitment offense is a

25  ─────────────────

26        [7]  Although petitioner argues that the Board "cannot use petitioner's past for a denial of
    parole," Pet. at 5, the Board can and must consider the circumstances of the commitment offense

                                        14

valid basis for an unsuitability finding by the Board.  Cal. Code Regs.  tit. 15, § 2281(c); *In re Seabock*, 140 Cal. App. 3d 29, 35 (1983) (finding that the nature of an inmate's commitment offense is a circumstance supporting finding of unsuitability for parole).  An offense may be especially heinous, atrocious, or cruel if, *inter alia*, the victim is abused, defiled, or mutilated during or after the offense; if the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; or if the motive for the crime was inexplicable or very trivial in relation to the offense.  Cal. Code Regs. tit. 15, § 2281(c)(1)(C), (D), (E).  The California courts have stated that in order to demonstrate "an exceptionally callous disregard for human suffering" within the meaning of applicable provisions of the California parole statutes, "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder.  Such circumstances may include . . . evidence that the defendant 'acted with cold, calculated, dispassion, or that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering.'"  *In re Smith*, 114 Cal. App. 4th 343, 367 (2003) (internal citation omitted); *see also Leon v. Kane*, 2008 WL 2705156, at *12-13 (E.D. Cal. July 8, 2008).  Here, there was significant evidence to support the Board's finding that the crime was "especially cruel" and demonstrated a "callous disregard for human suffering," since petitioner hit the victim, strangled her with his belt, and then mutilated her body by cutting her pubic areas and portions of her breast, and since the motive for the crime was inexplicable or very trivial in relationship to the offense.

////

---

and petitioner's past criminal, mental, and social history.  Cal. Code Regs. tit. 15, § 2281(b).  While a continued reliance solely on petitioner's past, unchanging circumstances could at some point amount to a due process violation, such a case is not presented here.  *Irons*, 505 F.3d at 854.  This was petitioner's first parole suitability hearing and, as discussed herein, the Board did not rely solely on petitioner's past, unchanging circumstances in denying parole to petitioner.  Moreover, as was the case in *Irons*, at the time of the challenged parole hearing, petitioner had not yet served the minimum number of years required by his sentence.  *Id*. at 665.

Additionally, the Board found that petitioner had a record of assaultive behavior and an escalating pattern of criminal conduct and violence, including a charge of lewd and lascivious conduct upon a child under 14 years of age; had a history of unstable relationships, mental illnesses, and substance abuse; failed to profit from society's previous attempts to correct his criminality; and lacked realistic parole plans.  More importantly, the Board found that in September 1988, petitioner wrote and gave his teacher a paper that contained sexually explicit information; in September 1990, petitioner was found with sexually explicit pictures of children in his cell; and in March 1993, correctional staff counseled petitioner regarding his sexually explicit correspondence with a fifteen year old.  As the Los Angeles County Superior Court noted, "[w]hen coupled with the concurrent commitment offense for violating section 288(a) P.C., these chronos take on serious proportions."  Pet., Ex. J.

Accordingly, this court finds that the Board's denial of parole to petitioner was based on "some evidence" that petitioner constituted a current threat to public safety, and that the Los Angeles County Superior Court's decision upholding that denial was not contrary to or an unreasonable application of federal law.[8]  Therefore, petitioner is not entitled to relief on this claim.

////

////

---

[8] Petitioner challenges the Board's consideration of the July 19, 2001 psychiatrist report on the ground that the psychiatrist did not evaluate petitioner, yet it was petitioner's choice not to be interviewed by the psychiatrist.  Moreover, the Board was aware the psychiatrist had not interviewed petitioner when it considered the report. *See Powell v. Gomez*, 33 F.3d 39, 41 (9th Cir. 1994) ("This court views acceptance and interpretation of a psychiatric report as an act more akin to an assessment of credibility of a witness than an act of legal analysis. The review of, and conclusions derived from, the report thus fall solely within the province of the trier of fact, in this case, the BPT. The BPT had the opportunity to evaluate the author of the report, an opportunity which various appeals courts did not have.").  Nonetheless, even excluding the report, there was still some evidence to support the Board's parole denial.  Additionally, although petitioner argues that the Board should not have stated that petitioner needed further therapy and programming since such further therapy and programming were not available to him, even excluding those statements, there was still some evidence to support the Board's parole denial.

16

B.  Other Miscellaneous Arguments

1.  Failure to Respond to Petitioner's Appeal

Petitioner also argues that the Board violated his due process rights by not timely responding to his appeal.  Pet. at 2.  He contends that the Board took more than seven months to respond to his appeal but was required to do so within 120 days.  *Id.* at 2, 3; Ex. C.

Respondents counter that the California Code of Regulations does not set forth any time restraints on the Board to respond to an inmate's appeals.  Answer at 4 (citing Cal. Code of Regs. tit. 15, §§ 2050-57).  They further argue that petitioner "ultimately received the denial to his appeal, the only remedy to which he was entitled" and he cannot show he was prejudiced by the delays because he was able to proceed with petitions for a writ of habeas corpus in all levels of the California court system and in this court.  Answer at 4-5.

For purposes of this federal habeas corpus action, petitioner has cited no federal authority for the proposition that the Due Process Clause required the Board to respond to his appeal of its parole denial within a certain period of time.  Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); *Whitfield v. Vaughn*, 272 Fed. Appx. 591, 592 (9th Cir. 2008) (claim that BPH "failed to set a parole hearing within time frame mandated by California law" alleged only a state law violation not cognizable on federal habeas).  In short, petitioner's argument that the Board took too long too respond to his appeal is not cognizable in this federal habeas corpus proceeding.  *Estelle*, 502 U.S. at 67-68. Nonetheless, even if the claim were cognizable, it would fail because petitioner has not alleged any facts showing prejudice resulting from the Board's delayed response to his appeal.  *See United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008) ("[O]ur cases considering due

17

1   process claims for revocation proceedings have held that relief is not called for unless there was

2   both unreasonable delay and prejudice.").  Therefore, the claim must be denied.

3                            2.  <u>Failure to Provide Petitioner with a Lifer Packet</u>

4          Petitioner also contends that the Board was required to provide him with his "lifer

5   packet" (the file of documents to be used by the Board at his parole hearing) prior to the hearing,

6   but failed to do so.  Pet. at 9.  He contends that, as a result, his due process rights were violated

7   since he was not afforded a fair opportunity to respond to the materials in that packet along with

8   his appeal.  *Id.*

9          Respondents counter that in the Notice of Hearing Rights that was given to petitioner, he

10  was notified that he had the right to review his central file before the hearing, prepare a written

11  response to anything contained in the file, and discuss any of the materials in the file with the

12  Board at the hearing.  Answer at 6.  Respondents note that petitioner elected not to attend the

13  hearing, however.  *Id.* (citing Ex. E).

14         Because "parole-related decisions are not part of the criminal prosecution, the full

15  panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

16  *Jancsek*, 833 F.2d at 1390 (internal quotations and citation omitted).  However, where parole

17  statutes give rise to a protected liberty interest, in addition to the requirement addressed above

18  that there be "some evidence" in the record to support a decision to deny parole, due process also

19  requires that prisoners be afforded notice of their parole hearing, an opportunity to be heard and,

20  if parole is denied, a statement of the reasons for the denial.  *Id.*

21         Here, there is no dispute that petitioner was provided advance written notice of his parole

22  hearing, an opportunity to review his central file before the hearing and prepare a written

23  response to anything in that file, and an opportunity to attend the hearing and ask and answer any

24  questions.  Answer, Ex. E.  Although he contends that his due process rights were violated by his

25  not having an opportunity to respond to the materials in his "lifer packet," he could have

26  discovered prior to or at his parole hearing what materials were contained within his packet, had

18

1  he desired to do so, and he could have challenged those materials.  Answer, Ex. E.  Additionally,

2  not only does petitioner not indicate what, if any, portions of his packet he would have

3  challenged if he had received a copy of the packet before the hearing, he has had several

4  opportunities since the hearing to challenge the Board's reasons for denying parole to petitioner

5  (including in this very action, to no avail).[9]  Accordingly, the state courts' denial of this claim

6  was not contrary to or an unreasonable application of federal law and the claim must be denied.

7                          3.  Failure to Postpone the Parole Hearing

8          Petitioner also argues the Board improperly failed to grant him a postponement of the

9  hearing since petitioner was part of a class action litigation against the Board at the time of the

10  hearing.  Therefore, he argues, he could not discuss or admit anything prior to or at his parole

11  hearing.  Pet. at 10.  He contends that California Code of Regulations, title 15, section 2253

12  authorizes a postponement based on pending litigation and that therefore the Board was required

13  to postpone his parole hearing.  Reply at 2.  Respondents counter that petitioner did not set forth

14  a valid reason for postponing his hearing.  They argue that petitioner's vague assertion now that

15  he was part of a class action against the Board is insufficient because petitioner has not provided

16  a court order or demonstrated why the existence of another lawsuit should have prevented his

17  hearing from proceeding.  Answer at 6.

18          For purposes of this action, petitioner has cited no federal authority for the proposition

19  that the Due Process Clause required the Board to postpone his parole hearing.  The issue of

20  whether petitioner was entitled to a postponement under California Code of Regulations, title 15,

21  section 2253 is not cognizable in this federal habeas corpus proceeding.  *Estelle*, 502 U.S. at 67-

22  68; *see also Bonin v. Calderon*, 59 F.3d 815, 841-42 (9th Cir. 1995) (denial of state-created

23  procedural right not cognizable on habeas corpus review unless there is deprivation of

24  substantive right protected by federal constitution).  Therefore, this claim must be denied.

25  _____

26      [9]  Petitioner does not contend that he did not receive a copy of the Board's decision
denying parole.

1        4. <u>Presence of Petitioner's Fired Attorney at Hearing</u>

2        Petitioner also argues that the Board should not have allowed an attorney that he fired to

3    speak on his behalf at the hearing.  Pet. at 10.  He argues that he had a legal right to fire his

4    attorney and did so, and that therefore his Sixth Amendment and due process rights were

5    violated by the attorney's presence at his parole hearing.  *Id.*  Respondents counter that the

6    Board correctly ordered petitioner's attorney to attend the hearing because of questions about

7    petitioner's mental condition and his ability to knowingly waive his right to counsel, and that

8    petitioner has not shown that the attorney had any impact on the Board's unsuitability finding.

9    *Id.* at 6-7.

10       It is clear from the record that the Board insisted that the attorney that petitioner fired

11   attend the parole hearing because the Board was concerned about petitioner's mental state and

12   his ability to knowingly waive the right to have an attorney present at the hearing.  Pet., Ex. Z, at

13   3-5.  However, regardless of the Board's reasons for allowing the attorney to be present at the

14   hearing, petitioner has not shown what, if any, prejudice he suffered as a result of the attorney's

15   presence at his parole hearing.[10]  To the contrary, the transcript of the parole hearing reveals that

16   the presence of the attorney did not negatively impact the Board's decision; rather, the Board

17   denied parole to petitioner based on the evidence of his current dangerousness, as discussed

18   above.  Accordingly, the state courts' denial of this claim was not contrary to or an unreasonable

19   application of federal law and therefore, this claim must be denied.

20       5. <u>Bias/Retaliation by the Board</u>

21       Finally, petitioner contends that the Board was biased against him and retaliated against

22   him by denying him parole (presumably because petitioner was involved in a class action against

23   the Board at the time of his hearing).  Pet. at 10, 15.  Although California inmates do have a due

24   _____

25       [10]  Petitioner contends that the attorney's presence at his parole hearing violated his due
     process rights because petitioner could not "defend the said attorney's statements."  Pet. at 10.

26   However, petitioner does not indicate which statements the attorney made at the hearing need
     defending and how they make any difference in the outcome.

process right to parole consideration by neutral, impartial decision-makers, petitioner's claims of

bias and retaliation are conclusory and are not supported by the record.  *See O'Bremski v. Maas*,

915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a

Board that [is] free from bias or prejudice"); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir.

1995) ("[c]onclusory allegations which are not supported by a statement of specific facts do not

warrant habeas relief.").  There is nothing in the record to show that the Board was motivated by

bias or inappropriate considerations.  To the contrary, the Board's decision to deny parole to

petitioner was supported by substantial evidence of petitioner's danger to society.  Accordingly,

the state courts' denial of this claim was not contrary to or an unreasonable application of federal

law and therefore, the claim must be denied.

CONCLUSION

In accordance with the above , IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for a writ of habeas corpus be denied;

2.  Petitioner's request to transfer this action to the Central District of California be

denied as moot; and,

3.  The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order. *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

his objections petitioner may address whether a certificate of appealability should issue in the

event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

////

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  December 18, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

22